Good morning. May it please the court. Judge Hurley mistakenly thought that the guidelines did not reflect the enticements of the young children and cited that as a reason to impose an above-guideline sentence. Under the Molina-Martinez case, there's a reasonable probability that that misapprehension affected the sentence and that this case should accordingly be sent back to Judge Hurley simply for him to determine whether, in fact, it had affected his sentence and, if so, to impose the sentence he would have imposed had he realized what the true guideline situation was. The guidelines, as calculated, would have been properly calculated based on the abuse of the teenage children, right? You didn't need the 3-, 4-, and 5-year-olds for the guideline calculation. That's correct, Your Honor. The calculation would have been exactly the same no matter how many minors had been involved. Just the two teenagers who testified at trial. That would have been enough. That would have been enough. And my point would be, Your Honor, that when you've got an enhancement like that, that encompasses all and any parts of the pattern, the size of the pattern may affect, a judge might conclude that the size of the pattern would affect where within the guidelines to impose a sentence, whether to impose. But didn't you specifically say that these were not factored into pattern? I mean, it looked to me almost as more than a forfeiture but actually a waiver. No, Your Honor. I didn't say it wasn't factored into the pattern. What I said was it wasn't factored into the calculation. And what I understood Judge Hurley to be saying, to be inquiring about was whether or not the calculation would have been the same whether or not the four children were included. And that is, in fact, what I literally answered him about. And that is what he asked by talking about the calculation. He didn't ask me whether or not that conduct was reflected in the guidelines or in the enhancement. He talked about the calculation. There would have been no reason for me to invite error that way, Your Honor. You're arguing double counting. I'm not sure I understand how there's double counting. If the teenagers alone get you the enhancement and under our precedent and the guidelines, as a matter of fact, the judge has the discretion to sentence outside the guidelines when he is not adequately captured by the guidelines. And certainly, Judge Hurley detailed what the abuse of the youngest children was to explain his upward variance. I agree with you, Your Honor. So what's the error here? I mean, there's no double counting where the judge has a valid basis for sentencing outside the guidelines? Your Honor, I'm not asserting that there was an erroneous guideline calculation or that the sentence was substantively unreasonable. What I am suggesting, Your Honor, and what I am urging is that there was procedural error. And the procedural error lay in the judge's misapprehension that the conduct relating to the four small children, young children, was not reflected anywhere in my client's adjusted offense level. And it was reflected. But isn't that really the same? There's a considerable ambiguity as reflected in your answer to Judge Calabresi's question before. It's a very subtle difference between reflected in the calculation and reflected in the guidelines. Why shouldn't we read the judge as making the very sensible remark that the guidelines don't adequately take into account the extremity both in terms of the numbers of children and in terms of the age of the children that is reflected by this case, and then giving a sentence that is under the Section 3553A factors the sentence that the judge thought was right? That's what he may say if this Court sends it back to him, Your Honor, and I would not be in a position to complain about it. But the fact of the matter is that it appears that he operated under a misapprehension. And it appears also, Your Honor, that that misapprehension was something which, even though there is a subtle point here, it is something which he kept on, which he focused on. It wasn't apparent until after I had answered the question and he imposed the sentence that he had been operating under that misapprehension. I didn't jump up and say — I should have, Your Honor. I missed it. There are a couple of things I missed in this case, including the — what was in the revision to the revised addendum when I got it, because I was focusing on other things, Your Honor. But the fact of the matter is the way he phrased what he was doing and the question that he asked and what he said at the end suggests to me that he was looking to justify that one of his justifications or a principal justification for going above the guidelines, which is — But at the very least, you did not call it to his attention. That's correct, Your Honor, and that's why plain error applies. Well, that's right. So it is a plain error. And so the question we have is whether — I mean, assuming that it wasn't waived, whether all the requirements of plain error, including injustice, you know, are also met. And that's a bit harder to do when this — when the distinction is, at best, a very subtle one. Well, Your Honor, in this case, I would say that they are met, and I think the Molina Martinez case talks about a situation where all you're talking about doing — and, by the way, cited this case's original decision and this Court's original decision of warning — all you're talking about doing is sending it back for a judge to think about whether he would have imposed the sentence differently. May I briefly address the return of property issue 2, which is perhaps more interesting? I have a couple of factual questions about that. Yes. One, wouldn't there be non-pictorial data on the hard drive that is clearly forfeitable, or wouldn't that be likely? For example, if he's got an address book on there, might it not include the addresses and contact information of co-conspirators in this case? Wouldn't there be likely records of the Internet chats that he engaged in in this case? Well, there are records of the Internet chats, Your Honor, and I don't think that they're forfeitable. And, in fact, the government gave us printouts of them and never claimed that those printouts were forfeitable. Well, they gave you — They were records. They gave you printouts, presumably in discovery. But in terms of the data on the hard drive, the request was for the return of everything that wasn't pictures. And I understand that that makes a certain concession or — you know, the defendant is, with respect to pictures, perhaps asking for less than he thinks he's entitled to, but he also may be asking for more than he could possibly be entitled to. Your Honor, I think that the records of the chats are indeed just that, records. Now, if he took a chat and forwarded it to somebody else in an effort to have that person — entice into permitting him to do what he wanted to do with that person's child, I think that would be forfeitable, because then the intellectual property itself would have been used in furtherance and in connection with the crime. But what you've just got now is a record of the crime, not something which itself is contraband, not something which was used to commit the crime. And I think you can — I think I understand that point. The other thing I wanted to ask is, he's also asking for metadata. Doesn't that metadata — was the request — did the request exclude metadata about the photographs? No, Your Honor. But the metadata — Doesn't that raise another — isn't that one of the things that the Court focused on in the hearing, that in terms of the difficulty of disaggregating, wouldn't that metadata be associated with the pictures themselves and therefore require more complicated disentangling than just, you know, there's a text file that's separate from a picture file? I don't believe that to be the case, Your Honor. But I would submit, Your Honor, that that is not a reason to deny a return of property or to hold that the forfeiture order precludes it. I think that that would be something to be dealt with on remand. We have taken the position that this is an equitable remedy. We realize that if it becomes unduly burdensome,  On Mr. Warnick — The district — I'm sorry, before the district court, the government said it would take thousands of hours to segregate the material. Do you have reason to think that's not correct? Well, with regard to the metadata, I believe the testimony at the hearing from Detective Forrestal, who gave conflicting testimony at the trial, was that it would take a day or two, maybe 40 hours. I forget that precise number. But you — We're not looking for thousands — There's other evidence that it would take thousands of hours. I mean, what is it you're looking for? What is it you want from the — Well, Your Honor, what Mr. — there are two things that Mr. Warnick wants, and I'll be candid with you. One of them is some personal files relating to financial information and so forth. It's stale, but he still wants it, and some other materials. And other things are the metadata. And Mr. Warnick is of the belief — What do you mean by — what do you mean by metadata? What I mean by metadata — and I'm not a computer expert — would be records that would show the size of the file, when the file was accessed, who last accessed it, when it was changed to the extent available. And Mr. Warnick, to get to the heart of it, and I told — Why does he want that material? I'm not — He believes — I understand the interest here. I'm going to tell you. He believes that that metadata will show that his computers were, one, unlawfully accessed and materials were retrieved from them, two — and prior to his arrest — and two, he also suspects and believes — and he's told me the reasons why he believes it — that there was what amounted to an illegal wiretap, whereby the chats that he was engaged in — Isn't all this much too late? I mean, isn't the time to have said this was when the government's forfeiture order came in? And it was a very broad order, probably, I think, too broad. But wasn't that the time to say this is too broad and try to make it, rather than now trying to have us go back and see what there was and wasn't? I mean — I don't think it's too broad, Your Honor, and I don't think that was the time to object, because I don't think it purported to cover the data that was in the hard drives, or as it existed elsewhere. If the issue is a Fourth Amendment issue, isn't the time to have raised that even earlier? Wasn't that — if he had a belief that there was some kind of illegal search and had any credible, plausible basis for thinking that could be true, why wasn't that a request made pre-trial in connection with a suppression motion, or at least a request for discovery that could help you to decide whether a suppression motion was in order? In fact, Your Honor, in part it was. But leaving that aside, Your Honor, I'm not saying that Mr. Warnock, if he discovered this to be true, would be able to pursue it legally. I certainly — it may be a purely pyrrhic victory if he succeeds in establishing that. But it is his — You're asking for materials that aren't forfeitable, and it seems — putting the financial information aside for a moment, the metadata you want is exactly what's forfeitable. It's the — it's the part of the computers he was using in the government's view to commit the crime. And you're saying if you got a chance to look at it, you would be able to show that he was basically either entrapped or there was evidence that was tampered with. You had a right to look at all of that before he was convicted. But now to argue that it's not forfeitable, it seems to me your very argument has made the case for why it's forfeitable. What am I missing? Well, Your Honor, I don't think it becomes forfeitable simply because it could have been the subject of a discovery before. And by the way, I didn't represent — No, no, no. And I think you're deliberately not understanding what I said. Your argument is that this metadata shows when the communications were made, when it was tampered with. This is the communications relevant to the crime. That is certainly forfeitable. No, Your Honor. It's not the communications relative to the crime. It's a record of when — when the computer files were accessed subsequently. And that's — But that is — that is material pertinent to the use of the computer for commission of the crime. And that's forfeitable. Well, Your Honor, I do — now I do understand what Your Honor is saying. And I was not deliberately misunderstanding it. And I am telling you, Your Honor, that I most respectfully disagree that it's forfeitable simply because it's a record of prior — of what happened to computer files that previously may have been — were part of the crime. In other words, a list of — this is like a list of child pornography and when it was accessed. And that list is not itself forfeitable. Is it that — that computer data showing when the — when the communications pertinent to the crime occurred is not forfeitable? It's hard for me to understand that, I must say. I don't see why that isn't something that is directly relevant to the crime. It's relevant. And it could have been asked for before. And perhaps it should have been pursued more quickly. Again, I didn't represent them at the time. But it doesn't become forfeitable simply because it relates to the commission of the crime or it's a record of the commission of the crime. It would seem to me that it would be very much like a list if a list were printed out much — no more than, for example, the printouts that were provided to the chats are forfeitable. They are a record of the commission of the crime. All right. We're going to hear from the government. Thank you. We'll pass your time, but thank you. Good morning, Your Honors. It's Lara Chynaskacs with the Appellee. May it please the Court. I specifically want to talk about the pattern enhancement, because as of that enhancement, Judge Hurley properly followed Judge Lynch's instructions in the decision in Warnick 1. In Warnick 1, Judge Lynch specifically stated that the conduct in question, which is the three children that Judge Hurley considered as a 3553A factors to give a sentence that he gave. Judge Lynch specifically said, the conduct in question as it relates to the three children can and undoubtedly will be considered by the district court on remand in assessing the factors relevant to sentencing under 18 U.S.C. 3553A. That was actually the instruction from the circuit, is that Judge Hurley should consider that, and he did. What Mr. Travulis is saying is somehow parsing the words pattern and calculation. And it's — with all due respect to him, it's disingenuous, because the question that Judge Hurley asked him was, but as to these other three victims, M.F. and the two boys, with respect to the latter three, the conduct that occurred with respect to them factored into the guidelines as they're presently configured. Is it — Judge Hurley specifically said, is it configured in any way in the guideline calculation? Mr. Travulis said, no, it isn't figured into the guideline calculation, and neither does the enticement of a girl factored into this guideline calculation. The guideline calculation is predicated upon the enticement of the teenage boys and the child pornography possession, distribution, et cetera. And the court said to me, Ms. Gatz, do you agree? And I said yes. So this argument is completely contrary to Mr. Travulis's argument before Judge Hurley. Judge Hurley looked for direction to the parties. He said, were these three children considered under the pattern enhancement? And Mr. Travulis said no, and I said no. And Judge Hurley specifically said, well, then I'm going to consider them under 3553A, pursuant to Judge Lynch's instructions, as a factor to consider. And he gave two theories on which he could sentence the defendant to the sentence he gave him. He said he could consider it as an upward departure or a non-guideline sentence. He said this was not within the heartland of cases, and it's clearly not within the heartland of these types of cases. And he also said this was a case, if any, that called for a non-guideline sentence. And frankly, he gave the defendant five years off from his original sentence after Wernick won. So he strongly considered the arguments of counsel and the submissions, and he found that that was the appropriate sentence under the guidelines. So the record is crystal clear that all the parties agreed these three children were not considered under the pattern enhancement. And to argue that the pattern enhancement says two or more acts against children, so it's two children. That's the baseline. To say that now, going forward, if there's 100 children molested, that they are the subject of the same five point enhancement as when one or two children are molested or attempted to be molested, violates the spirit of the guidelines in total. So I ask the courts to consider strongly Judge Hurley's very clear direction in his statements at the sentencing hearing. That the reason that he imposed that sentence was because he believed, and he relied on the party's statements, that those three children's, the attempt to molest those three children was not considered under the guidelines in that pattern calculation. It's not double counting. The three children deserved to be considered separately from the two children that were, the teenage boys that were molested. With respect to the return of property motion, it is clear that the defendant forfeited those computers. To say that he forfeited the physical computers but not the content is really an absurd argument if you think about it. You're saying that you actually- Why, excuse me, I think isn't your argument a little bit extreme? If a person uses a computer to access one piece of child pornography, he's committed a crime, and the crime was committed using the physical computer. It wasn't committed using his stock investment records or data from chemical research that he was working on towards trying to patent some new drug. Or family photographs from his parent's 50th anniversary party. He didn't use any of that intellectual property, as Mr. Trabulus refers to it, to commit the crime, did he? No, Your Honor, and then, of course, you wouldn't forfeit the property. You would ask for it back at the proper time. But if at the time you made that order, he came in and said, this computer includes some things relevant to the crime, but includes all the kind of material Judge Lynch has spoken to. And I want that back because this order is too broad, so I want you to make that order clear so that it is narrower. Wouldn't that be, in fact, a very powerful argument? It would be, Your Honor. And in fact, in the district court, I asked Mr. Trabulus over and over again, what is it that Mr. Wernick wants from these computers? If it's family photos or other things. It's just that your argument now seemed to be broader, that even if they had done something like that, if he had done something like that then, he couldn't get it back because after all the computer was forfeit and therefore everything on it would be forfeit too. And I'm having trouble with that broader argument. Now you're saying, had he specified things that were on the computer that were not subject to forfeiture, the order might have made clear that those were not to be forfeited. I'm sorry, I was inarticulate. What I meant to say was that Mr. Trabulus' argument now that the data on the computer was not forfeited pursuant to the forfeiture order is an absurd argument. Because I don't think you can parse it out this way seven or eight years later after something's been forfeited. Especially given the unduly burdensome task it would take a law enforcement officer to go through six hard drives with thousands of images of sexually- That would have been true at the beginning as well. So I'm trying to separate out what you are saying should be forfeited anyway because it's too hard on the government or this or that or the other. And what instead might have been given back had the objection been made timely. And it seems to me you're kind of going back and forth between one and the other. And I'd like to know which of these you're really telling me. Well, I'm telling you a little of both. What I'm saying- Yeah, that's my problem. And I admit that. But what I'm saying is, if there is something in a case like this where a defendant asks before its property is forfeited, that there's something in particular that he wants on his computer because it's important or it's financial information that he needs on an ongoing concern, there's a mechanism by which to do that. There's a mechanism by which to do that that the defendant waived long ago. What I am saying is to now argue at this point after something's been forfeited- Waived? Forfeited. Yeah. After all this time to come back and say, never mind, I want things back. And the government should now be imposed with the burden of going through. These computer hard drives all contain child pornography. It's not an instance in which somebody looked at a few pictures on their work computer. Yeah, there are three different arguments that I could disentangle here in sort of increasing levels of extremity on the part of the government. One is, just as an equitable matter, a district court should deny a request like this because the burden outweighs the legitimacy of the claim, at least where the claim made is not for anything in particular that might be valuable to the defendant and clearly not forfeitable, but is a blunderbuss request for things that include, as far as I can see, things that are forfeitable. And that in any event, disentangling it would be very time consuming and expensive. And in any event, it comes so late. That's the narrowest argument. You said it much better than I could have said it. Then there's an argument that this whole thing was sort of waived or forfeited by not raising it sooner because the order calls for the forfeiture of the hard drive and all its pumps and all its works. And then there's a third argument that is even more extreme, that as a statutory matter, he simply has no right, never had any right, if he resisted, if he asked for something, the government shouldn't give it back because it's all forfeitable under the terms of the statute, meaning anything that appears on any of the computers or electronic devices that were implicated in the crime. And I think what we're trying to get at is how far do we have to go to resolve this case in favor of the government? And is the government making all three of those arguments so that if we, for some reason, are not satisfied with the less extreme arguments, are you maintaining that the family photographs and the stock portfolio records and the unpublished novel and whatever else a person might have on a computer is automatically forfeit to the government as soon as that computer is used for an illicit purpose? Well, I think that the statute does require the third iteration of what the court just went through. But as a practical matter, I can only say that I think that if a reasonable request is made at a reasonable time, that the government, in my experience, complies with those requests. But in this case- As a matter of discretion. Yes. But again, that's not- I'm subject to court order. Yes. I thought that the gist of your statutory argument here was limited to the facts of this case. That is when, as in this case, you can show that pornography was on this computer. In other words, the computer was used for that purpose. You have the right to forfeit the computer. Now, if the defendant says, ah, but there are files or materials that are separate and distinct, you might concede that he has a right to have those back, but that your statutory argument is, as you stand here today, you don't have to go through and segregate what was clearly part of the pornography files and what may have been part of the novel in the absence of a request. Do I understand you correctly? Yes, Your Honor. Okay. And the final thing I'd like to say is, this return of property motion was all an attempt again and again by the defendant to get these files to try and prove his innocence. He had three experts at the district court level review these hard drives in their original form, not even in copies. And there was no- He had full access to the files in the pursuit of the criminal case. Repeatedly, and he never asked for copies of anything. He just wanted experts to look at the metadata. So I think this is all an attempt at the 11th hour, five years later, ten years later, to do what he couldn't do the first time around because the evidence doesn't exist. I have a very small point, and that goes to the seeming inconsistency between the checking of the box, we agree with the PSR exactly as it was, which said, in effect, that certain attempts were completed. And the verbal statement by the court, no, there were some incompleted. Shouldn't that be corrected? Just as a matter, in the most trivial of ways of saying, take off the check of the PSR and say something else. Just a very minor thing, but isn't that an inconsistency that probably ought to be corrected? I think if you read the judgment along with the pre-sentence report, it's clear from Judge Hurley's judgment what he says is that there were some unconsummated acts. No, no, I know what he said was clear. It's actually in writing as well. Yeah, but there is that check. And couldn't somebody read that check some other time and say this was done and therefore possibly in a parole or in something else later that count against him? It could, Your Honor. And I offered Mr. Travolos the option to recommend to the court that the sentencing hearing minutes be appended to the pre-sentence report. He didn't want that. He didn't like that option. He wanted specifically Judge Hurley to do something which the rule didn't require. So I understand the concerns, and it is a concern, but I think if you read the judgment as a whole, it's clear that Judge Hurley, in the judgment it actually says why he gave the sentence he did. And he specifically said- Yeah, I know he did. I know he did. And it's just a question of whether there is some easy way of taking one check off and checking something else. With this case, there was no easy way to do anything, Your Honor. But yes, the answer is yes. Does that create the possibility of misleading? It may. Okay, thank you. Thank you, Your Honor. What did you learn from Mr. Travolos in rebuttal? Thank you. Mr. Warnick, prior to trial, did have experts who were given access to the hard drives. And I believe he actually may have had copies of them, or at one point, the original hard drives were actually given to his counsel. When the Adam Walsh Act was passed, it was necessary to immediately return them. I don't know whether the work that he wants to have done would be done now, would have been done otherwise. Let me just pose a hypothetical, which is, let's say he did everything which we've said maybe should have been done by his trial counsel. And gotten these copies and all of this material in discovery. And then he went to trial, and he was convicted, and there was a forfeiture order. Does it follow that he would have to give everything back, that he could no longer use it? That the information, that the intellectual property which had been given to him in discovery was now forfeited by virtue of this forfeiture order? I suggest it would not, Your Honor. And- So he went up to the district court to decide how material like that remains or doesn't remain in the defendant's hands. I mean, if he was given access to actual pornographic materials involving minors, and the district court ordered it turned back, I'm not sure you could have an objection. Absolutely no objection, Your Honor, and that isn't even what we're talking about. We're talking about the things like the metadata and records of what happened. It looks to me like you're asking for this not because you challenged the government's ability to forfeit it, but because you want now another look at it for a possible habeas petition. That's not my purpose. I am challenging the government's, legally I'm challenging the ability to forfeit it, Your Honor, because I don't believe that it falls within any of the categories of forfeitable material. You're saying that regardless of Mr. Wernick's motive in wanting to look at this material, that that's irrelevant to your argument because you're just saying it's not properly forfeitable. That's correct. I only got into the motive because I was asked, Your Honor. I understand. And by the way, I want to add that I have responded to the government's request to pare down the requests. For example, during the hearing, we said we don't want unallocated space, because I had not focused on it. But that is what would take the most, that would be materials that Mr. Wernick himself had deleted, but might still remain on those hard drives, and that would be very time consuming to go through. We don't want that. I agree with the fact that when the forfeiture order was presented, your client agreed not to file or interpose any claim to the forfeited property in any judicial proceeding. Yes, Your Honor, but it's a kind of a chicken egg argument, because if the forfeited property was only the hardware, and he understood that. Where does the order say that? Well, it lists a bunch of items, and it doesn't list the intellectual property that may be contained on them that may also be contained elsewhere. We're not seeking to get it from, the point is, as this court recognized in Ganias, you have an interest in intellectual property that exists, for example, on cloned, on computer cards. Wait, bear with me. You're challenging the district court order. If you're right that this forfeiture order doesn't include the intellectual property and the government won't give it back to you, isn't your place in front of the district court to say, Judge, your order doesn't cover the intellectual property. I'm going to guess that the reason you're not in front of Judge Hurley is because everybody did understand before Judge Hurley that it included everything that was on the computer. But if you're right that your waiver didn't cover intellectual property because the order didn't cover intellectual property,  I made the argument to Judge Hurley that it didn't cover the intellectual property. And he didn't, and that argument was made, it was raised, and it was preserved, and it's being made here. And he rejected it. He rejected it, Your Honor, but I don't think a fair reading of that forfeiture order references anything other than physical objects. And much as in Ganias, you have a physical object, the computer hard drives there, and you have the intellectual property which existed both on those hard drives and on clones. I'm sorry, you think it only included the physical objects? Yes. Now, the child pornography- What about the pornography that was on the computers? I beg your pardon? What about the pornography that was on the computers? That was independently something that could never be given back because it was illegal. It was a crime to get in front of your district. Isn't it rather peculiar for an order to be made that goes to the hard drive and doesn't go to all the things that are connected with the crime that are on the hard drive? Now you're saying, well, that was automatically forfeited because it was a crime. But then there's all the metadata with respect to the crime that might be doubtful. So it would be very peculiar to have that order be just limited to- I don't think it's peculiar at all. The metadata, I don't believe, was forfeitable. It was not contraband. It was simply a record of what happened. Some of the metadata might be, some of it might not. No, I don't think any of the metadata, none of which contains a depiction or was used to commit the offenses is forfeitable. Certainly, images could be. Images could be child pornography or they could be images of adult pornography that were traded for child pornography. We don't want to get into that. We don't want any of them. We agree, but the fact of the matter is that the metadata is simply a record of computer usage and a record of usage- Back to the interpretation of the order. I agree with you when you say the child pornography itself is automatically forfeitable. But it still has to be ordered, forfeited. There are a lot of things that are automatically forfeitable that are obviously forfeitable, but then that's what the forfeiture order is for. Does the order specifically say we're forfeiting the child pornography images and the hard drives? No. No, because that would seem to me to imply that the order should be interpreted to mean the hard drives and what's on it. Because otherwise, there's no forfeiture order that refers to, as you say, the obviously forfeitable child pornography. I don't think there was any necessity to formally forfeit the child pornography, because the child pornography was contraband. Wherever it might be found- Thank you. We understand your argument. Thank you very much. Thank you, Your Honor. We're going to take the case under advisement. Could we-